All right, we now move on to the last argument on the calendar for today. That's 28th Highline Associates versus Roche. Let me just make sure the parties are here. Mr. Roche, are you here? Yes, I am. Yes. Oh, there you are. Okay. And Ms. Reispel, are you here? Yes, Your Honor. Good morning. I'm here, and I'm also with my colleague, Ashley Hunt. Okay, great. I can see and hear you both. So, we have five minutes of argument for each side. Mr. Roche has reserved two minutes for a rebuttal. Before we start, Mr. Roche, you have a motion also to basically expand or enlarge the record. I conferred with the judges on the panel before argument today. We'll grant that motion. You can refer to those materials if you like, okay? You may proceed. Go ahead. Excuse me for one second. It says eight minutes. Oh, I'm sorry. Is that right, or is it five? I thought it was five minutes. I may not have— Five minutes per side, yeah. So, it should be five. Yeah. Okay. Thank you. Can we correct the clock? Mr. White? Your Honors, I think also, before we signed up, Mr. Roche had reserved some time for rebuttal, so— Right. You've got three minutes for rebuttal. No— Two minutes for rebuttal. Two minutes for rebuttal. I'm sorry. Okay. In actual fact, could I swap that and just have one minute for rebuttal? Because I thought that would give me six—I thought I had eight minutes less. I need about four minutes to make my argument, if that's okay, and then just one minute for rebuttal. Would that be okay? All right. Any objections to that? So, that's fine. Can we just add a minute to the count, and we'll subtract a minute from the rebuttal. All right, Mr. Roche, the floor is yours. Thank you. Thank you, Your Honors, very much for the opportunity to make oral argument. I'm Ian Roche, pro se-appellant in this case. I'd like to make three points which demonstrate how the related company totally destroyed my trust and confidence in them throughout the whole proceedings in this transaction and the legal proceedings to date as well, and how they acted in bad faith. First of all, I'd like to focus on the dishonest way in which they behaved. Primarily in that was around the time of completion, the original close date on the apartment, which was the 21st of June 2017. Related company was in negotiations with Culbo Cravers Roberts for a $162 million mortgage on 30 of the unsold apartments in the building, including unit 33. They did not disclose that, even though it must have been top of mind as they were going through those negotiations. They didn't disclose it to Judge Sweet in a hearing that I obtained a transcript to, and they didn't disclose it in any of the pleadings to date, either in the original pleadings or in their appeal. Secondly, there were multiple dishonest statements which were made. Ms. Reisbaum has said they were just forecasts, but they weren't. They were outright lies. Number one, I was told that they were imminently about to increase the price of apartments. This was just not true. By obtaining, and a lot of this information came out after, when only related had access to it, but by getting attorney general filings from the related company, and also street easy documents on sales, I found that they never increased prices. They actually gave discounts ranging from 1.5% to 23.7% on three-bedroom apartments in the building. Secondly, they claimed in an email, this is a related sales agent who ran the sales office, that most of the three-bedroom apartments were sold. This was totally untrue. They actually had only sold two of the three-bedroom apartments, eight or 80% remained unsold. They also told me that in terms of the storage and parking, so there were two sides to this transaction. One was the apartment. The second was storage and parking. Storage and parking had a separate rider for the escrow monies that were paid. Specifically, there was a clause in that for those escrow monies. If for any reason at all, close on the apartment didn't happen, those monies would be returned to the buyer. That equated to $154,000, 20% of $720,000. The other thing is in terms of the escrow agent, that there were huge conflicts there. The escrow agent, I found out, had worked on a transaction with a Merco real estate of $200 million, which was a spec just for the related company, which was totally in conflict with the stated clause on that escrow agreement. There was also a further email, which I submitted to your honors on the 20th of December, where the escrow agent said that they could take the deposit monies without a judgment. I'll then come on to the unequal negotiation. The contract was not negotiated over months. The contracts were sent out and returned within 10 business days without a single change. There were not multiple concessions as related claim, and it's absurd to argue that this was a fair and equal negotiation. Related has 3,000 employees, $70 billion in real estate assets at the last measure, and more than 3,000 qualified real estate professionals. Did you have a lawyer, Mr. Roach, at the time that you negotiated this? I had a lawyer that I got in New York through the selling agent, which Brown Harris Stevens, I think it was, a lawyer called Jesse Gordon, who I met at the SoHo grant, and he went through the contract with me. The answer is yes, you did have a lawyer? Yes. The answer is yes, you did have a lawyer. Let me ask you this. You'd mentioned a number of other documents. Did you possess those documents at the time you were in front of Judge Sweet? No. When I wasn't in front of Judge Sweet, with Related, they never disclosed that they had the mortgages with KKR in the proceedings. In fact, Judge Sweet pressed them on the release. No, I didn't have those documents. And neither did I have the pricing information. You were represented in front of Judge Sweet, weren't you? Yes, I was. Okay. All right. Thank you. Okay. I see your time is up. I'll let you just sort of wrap up what you were about to do. So, I was never defaulted with a specific close date by Related. I adjourned the original close in the 21st of June, 2017, because the apartment just has public spaces, gym, parking, storage, et cetera. Related never established they were ready, willing, and able to close. They never disclosed the liens they had on the apartment. I was told that I failed to show that I was ready to close. That's just not true. Mr. Eisbaum and Related saw all my financial statements to prove I could buy the building in cash. And Mr. Eisbaum actually got all of the information on Discovery that showed all my financial filings also to show the money was there to close. They did erroneously serve a default notice in November, but apologized after issuing that and then continued to negotiate and issue additional contracts, which I didn't sign, and actually had a settlement call with me in February, 2018, where they offered to return all of my money or swap it to another apartment where I wouldn't need to provide any further funds. I'm sorry. There's something that I don't know that I understand, and that is the arguments that you're making now. Yes. And the basis of documents that you're referring to now, were they ever made before any district court judge? So the arguments in terms of the misrepresentations were made, but we didn't have on those misrepresentations because there is a time lag in terms of that information coming out. Specifically also, the details about the mortgage, Your Honor, was on a site called Real Deal. That wasn't accessible at the time of the original sitting with Judge Sweet. So we're hearing that for the first time, we're the first court to hear that. We're the first court to hear that, and it's very regrettable, but it seems that the related companies suppress our... So I just want to... Yes. In terms of the default and the settlement, I understand that that was mentioned to Judge Sweet, but it was at that stage, his main focus was on, was I a expert investor in real estate, which he concluded for some reason that I was, and that it was an equal negotiation. So some of this information was suppressed by related. Yes, it's unfortunate. Okay. Thank you, Mr. Roach. You reserved a minute for rebuttal. We'll now hear from Ms. Reisbaum. Thank you, Your Honors. May it please the court. My name is Emily Reisbaum. My colleague, Ashley Hunt, is with me from the law firm Claret-Garonne Reisbaum on behalf of 28 Highline Associates. Your Honor, it's correct. A lot of this is new. A lot of this was not even in the briefing before the court, let alone for the district court. The facts are... An elementary... Can I ask you a very elementary question? We're here on diversity of citizenship. Correct, Your Honor. That's why we're in federal court. Yes. That's why we're in federal court. And we had made a 12C motion. And in fact, Mr. Roach had also made a 12C motion. So they were competing 12C motions. Both parties agreed that the court had all the information it needed to decide the merits of this case. And Judge Sweet correctly decided that the parties had an airtight agreement that left no room for the defendant, Mr. Roach, to get his deposit back after he failed timely to Mr. Roach's lawyer could not then and Mr. Roach cannot now try to poke holes in that agreement. And just to sort of raise some of the things that I'm even hearing for the first time in this argument, the question about... And the court alluded to, were these documents available to Mr. Roach before? Sure, they were. And 28 Highline did not suppress any evidence. We responded to discovery as discovery was going forward. There was no motion to compel that we had failed to comply with. He was represented by counsel. Information about the mortgage that 28 Highline had was published in 2017. Well, you know, the problem here for us with respect to both of your arguments, I think, just speaking for myself, is you're saying these things and we're a court of appeals. I don't know how we can say, gee, that's a good point or, gee, that isn't a good point without having found it. We don't do facts. Correct, Your Honor. And I'm only giving that by way of background to say that Judge Sweet's decision was decided in February of 2019. More than a year later, at any point before between February 2019 and February 2020, if he's free to do that, represented by counsel until April 1st of 2020. And there was never a hint that there was anything missing from the record because actually there wasn't. So on the record that we have, Judge Sweet was absolutely correct. This was a airtight agreement. Mr. Roach had conceded that he did not rely on any prior statement by anybody, oral or written. I don't take it too personally, but I just want to address the sort of aspersions cast on me. I feel like I have to respond to point out the absolutely false statements that Mr. Roach is making. The parking rider does not provide a refund if there is not a closing. The parking rider refers back to the primary agreement and says that if there is a default, then the liquidated damages and all the default provisions of the agreement apply even with regard to the parking rider. He complains that he was upsold and that they switched deposits. But if the court looks in the record, that is absolutely not the case. At the special appendix, page 57, you can see the check written by Mr. Roach's lawyer, Jesse Gordon, a real estate lawyer that he had hired who represented him, who did negotiate some concessions. There was a rider to the agreement that provided Mr. Roach the opportunity to adjourn the closing if he wanted to. That check at special appendix 57 is very clear that it was a check for unit 33, this apartment. 28th Highline didn't switch his deposit on him. Again, as the court pointed out, Mr. Roach feigns that he had some sort of weakness and some unequal bargaining power. He was represented the entire time. There is no basis for him to try, at this point, to get out of the agreement. Again, I really am here to answer any questions that the court has. We respectfully request that Judge Sweet's lengthy, reasoned decision be affirmed. Thank you, Ms. Reisbaum. Mr. Roach, you have a minute for a rebuttal. You're on mute. You're on mute. We can't hear you. Thank you. I'm a novice. Firstly, Ms. Reisbaum is totally untrue when she says I was represented by Council until April 2020. I have done the entire appeal as a pro se appellant. My lawyer was SGR, Smith Gamble Russell. I later found out that the bridge group that they're part of was conflicted and worked for Related. That is totally untrue, and she's lying. The rider in… Mr. Roach. Mr. Roach. It's irrelevant. Okay. So stick… You know, there's no need for you… This isn't about you and her. This is about a legal issue, and your brief limits what you argue. You characterize yourself as a novice. You put down $2.4 million on an apartment. I hired… I'm not… That's not walking around money where I come from, Mr. Roach. So please, and your arguments are restricted by what you put in your briefs, sir. When you represent yourself, you do so at your peril. Okay. This is a lot of money, and you're representing yourself. New York is filled with lawyers. Okay. Go ahead. Your Honor, sorry, I approached 17 different lawyers, and they were all conflicted with Related, and it was very easy for me to get unconflicted legal representation. It is true that I was upsold to another apartment. The email which was suppressed by Ms. Reisbaum was saying… Did you argue that in your brief? Did you argue that in your brief? Yes, I did. I argued it, and I mentioned the email. Right. I'll look for it. It was an apartment, a two-bedroom apartment at $6.395 million, and it was upsold, and I referred to that and attached it in the recent letter and in the brief as well. Ms. Reisbaum asked for that email to construct the record. To say that there were no concessions, there were concessions, is again untrue. The ability to adjourn was actually an original contractual clause. There were no concessions that were given by Related whatsoever. The last thing I would say is that we've heard today that these documents were available. They simply were not. They were available to Related. The filings with the Attorney General, the way that the apartments were closing and the discounts they were closing at, they get updated. I think… I don't understand the U.S. real estate market, but they're updated over a period of months and then republished by companies such as StreetEasy, so it takes a long time to do that. When I've printed off articles, you'll see the dates are different. They're prior to that. A lot of the articles that go online about the Related company, they suppress them with search engine optimization, so when you go back to look for those articles, you can't find them. Did you make an application? Did you… There's a rule called Rule 60B. Did you make an application to Judge Sweet that newly discovered evidence showed that you had additional defenses to this action to take your deposit? We were in the middle of discovery, so these things… No. Answer my question, sir. Did you make an application to the district… Let me finish. Did you make an application to the district court that there had been newly discovered evidence that reflected that you had a valid defense and that because you'd just been able to find it, that the judgment should be vacated and that new evidence should be received by the court? I didn't know I could even make an application. Okay. Sorry. Well, because… Okay. I understand that, but you're representing yourself here, sir. Okay. I have had a lot of help from the Pro Se Unit, and that's why I filled in a T-108 form. Okay. The other thing I want to say is that in terms of the discovery and the documents, we were in the middle of discovery. Discovery was ordered, and then summarily a judgment was made without the benefit of discovery. Ms. Reisbaum is saying that she disclosed the financing. I checked with KL Discovery, who did the disclosure. They did not disclose the mortgages in discovery. If you look at the transcript of the hearing with Judge Sweet, where he talks about are there any complications in terms of liens on this apartment, anything I should know, she changes the subject. She dodges the issue. How could she not know, and how could Related not see when they're selling? And I agree with you. It's a huge amount of money. This was a family home for my husband and I in New York. It's a lot of money. I worked very hard for it. I bet you do. I still work very hard. This was a lot of money. But in terms of discovery, they did not disclose the details they should. And I feel very bad that we could have avoided all of this if she had just stepped up to the plate, or Related had, and said, look, actually, we have some mortgages. Thank you. Well, can we strike a deal? Thank you. So we will reserve decision. Thank you both.